**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

THE TALARIA COMPANY LLC      *
d/b/a HINCKLEY YACHT SERVICES
One Little Harbor Landing      *
Portsmouth, Rhode Island 02871.
     *

        Plaintiff      *       CIVIL NO.

    v.      *

MICHAEL DUPLESSIE      *
7815 English Way
Bethesda, MD  20817      *

and      *

BAYSHORE MANAGEMENT, LLC      *
SERVE ON: Michael Duplessie,
Managing Member/Owner
7815 English Way, Bethesda, MD 20817      *

        Defendants      *

    *     *     *     *     *     *     *     *     *     *     *     *

**COMPLAINT**

Plaintiff, The Talaria Company LLC d/b/a Hinckley Yacht Services, by and through its

attorneys, Meighan G. Burton, and Pascale Stevens, LLC, hereby sues the Defendants, Michael

Duplessie and Bayshore Management, LLC, and states as follows:

**PRELIMINARY STATEMENT**

1.     This is an action for infringement and dilution of Plaintiff's famous and federally

registered trademarks, false designation of origin, unfair competition, and cybersquatting under

the Lanham Act, 15 U.S.C. § 1051, *et seq*., and for substantial and related claims of maritime

breach of contract, tortious interference with business relations and prospective advantage, and

disparagement or slander of title, under the admiralty law of the United States and the common laws of the State of Maryland, arising from the Defendants' refusal to pay the legitimate amounts charged by the Plaintiff for services and repairs provided to Defendants' vessel, and Defendant Duplessie's intentional and malicious attempts to damage and disparage Plaintiff and its products and services by broadcasting false and misleading information regarding the nature and quality of the Plaintiff's products and services, namely, its luxury yachts. In order to broadcast this malicious, false and misleading information, Defendant Duplessie has engaged in the unauthorized use of the Plaintiff's famous trademarks, registered and uses a domain name containing Plaintiff's marks, and created a website and social media which use the Hinckley name and marks.

2.      Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 (federal question) and 1338(a) and (b) (relating to patents, copyrights or trademarks), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4.      In accordance with Federal Rule 9(h), this is an admiralty or maritime claim for purposes of Rule 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. This court has admiralty and maritime jurisdiction under 28 U.S.C. § 1333, as the subject dispute involves a maritime contract for repairs to a vessel.

## VENUE

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants resides in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and/or 28 U.S.C. § 1391(b)(3), in that

Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

6.     Plaintiff, The Talaria Company LLC d/b/a Hinckley Yacht Services ("Hinckley" or "Plaintiff"), is a limited liability company formed under the laws of Delaware with its principal offices located at One Little Harbor Landing, Portsmouth, Rhode Island 02871. Hinckley conducts business here in Maryland at 8600 Brooks Drive, Easton, Maryland 21601, among other locations.

7.     Defendant Michael Duplessie ("Duplessie") is, upon information and belief, a resident of Montgomery County, Maryland, at the address set forth above.

8.     Upon information and belief, Duplessie is the sole member of Bayshore Management LLC ("Bayshore"), which was a limited liability company formed under the laws of Wyoming, with its principal office located in Bethesda, Maryland.  Bayshore was administratively dissolved as of October 2021.

9.     Duplessie and/or Bayshore (together "Defendants") are or were the owner of a 33' recreational vessel manufactured in or about 1961 by Hinckley, known as "PRESSURE DROP" or "CAPELLA" (hereinafter the "Vessel").  The Vessel is currently located at Plaintiff's Easton Yard.

10.     At all times, Duplessie was an agent of Bayshore.

## HINCKLEY AND ITS TRADEMARKS

11.     Hinckley has been in the business of designing, manufacturing, distributing, servicing and repairing luxury sail and powerboats since 1928.  The current Hinckley yacht line

includes several models ranging in size from 29 to 55 feet, and all are built to order, customized to meet every need of the purchaser.

12.     In connection with its yacht business, Hinckley operates service yards in eight locations along the east coast of the United States, including two in Maryland.  The Hinckley Yards in Annapolis and Easton offer extensive maritime repair services as well as a full-service marina, and storage and related marine services for both Hinckley and non-Hinckley vessels.

13.     Plaintiff has used the HINCKLEY trademark and service mark in connection with its maritime products and services for more than 90 years.  Plaintiff is the owner of the following federal trademark and service mark registrations, among others:

(a)     Registration No. 0888178 for the mark HINCKLEY for sail boats, issued on March 24, 1970.

(b)     Registration No. 1502956 for the mark HINCKLEY for power boats, issued on September 6, 1988.

(c)     Registration No. 2415096 for the mark HINCKLEY for boat storage, boat yard services, and boat chartering services, issued on December 26, 2000.

(d)     Registration No. 2783466 for the mark HINCKLEY for retail store services featuring clothing, footwear, headgear, bedding, sporting goods, jewelry, books, mugs, model boats, tote bags, key chains, belts, towels, etc., and for yacht brokerage services, issued on November 18, 2003.

(e)  Registration No. 2517428 for the logo shown below, for power boats, issued on December 11, 2001:



True and correct copies of printouts from the United States Patent and Trademark Office

database showing the current ownership and status of these registrations are attached as

Exhibit 1.

14.     The foregoing registered trademarks and service marks are collectively referred to

herein below as the "Registered Marks."

15.     The above registrations are valid and subsisting, and are incontestable.  Pursuant

to 15 U.S.C. §§ 1065 and 1115(b), these registrations are conclusive evidence of Hinckley's

ownership and the validity of the Registered Marks and of Hinckley's exclusive right to use the

Registered Marks for the identified goods and services.

16.     Hinckley has continuously used the Registered Marks, as well as other

unregistered trademarks, including the marks HINCKLEY YACHTS and HINCKLEY YACHT

SERVICES (the "Unregistered Marks"), consistently for many decades in various geographic

areas, including in Maryland.

17.     Hinckley's Registered Marks and Unregistered Marks are collectively referred to

hereafter as the "Trademarks."

18.     Hinckley has owned the domain name "hinckleyyachts.com" since 1999, which it

has used for many years to promote its various products and services described above at the

website https://www.hinckleyyachts.com/.

19.     Hinckley has devoted many millions of dollars over the years to promote and

advertise its products and services using the Trademarks.

20.     Hinckley has established considerable goodwill and recognition, and valuable

trademark and trade name rights in the Trademarks, by virtue of its long use of the marks and

names, its substantial promotional and marketing efforts, and strong sales and revenues of products and services offered under the Trademarks.  The Trademarks are and have long been widely recognized in connection with a broad range of products and services offered and provided by Hinckley.

21.     By virtue of the acquired distinctiveness of the Trademarks as applied to Plaintiff's goods and services, the extensive use and promotion of the Trademarks by Plaintiff, the strong and sustained commercial success of Plaintiff's business associated therewith, and the federal registrations for the Registered Marks on the Principal Register, the Trademarks have long become famous.

**THE PARTIES' BUSINESS RELATIONSHIP AND DUPLESSIE'S REFUSAL TO PAY**

22.     In or about October 2020, Defendants brought the Vessel to Hinckley's Easton Yard for winter storage and various repairs and upgrades.

23.     From October 2020 through November 2021, in addition to providing storage, winterization, cleaning and recommissioning services, Defendants requested and/or authorized extensive equipment upgrades and repairs to the Vessel, including, but not limited to: removing and replacing pumps and fuel lines, refitting the head, replacing sea cocks, replacing and sealing unused thru hulls, painting and varnishing the exterior, replacing rigging, converting wire to rope halyards, installing new batteries, battery boxes, banks and chargers, refitting the cockpit locker, and extensive engine and transmission work.

24.     All of the foregoing work was performed by Plaintiff or its agents in a quality, workmanlike manner, the work was completed, and Defendants were provided an invoice for the labor and materials provided to the Vessel, in the total amount of $260,002.  Defendants paid a total of $143,240, for a net balance due and unpaid of $116,762.

25.     Despite repeated demand, the past due balance of $116,762 remains due and owing.

**DUPLESSIE'S DISPARAGING AND UNLAWFUL ACTS**

26.     In an apparent attempt to avoid paying for the services and materials provided to the Vessel by Plaintiff, Duplessie began a crusade against Hinckley in a malicious attempt to stop the public at large from purchasing Hinckley yachts and services and to cause irreparable damage to Hinckley's business reputation and goodwill.

27.     In 2022, Duplessie registered the domain name "hinckleyboat.com" with the registrar, GoDaddy (the "Domain Name"), having a bad faith intent to take advantage of the reputation and goodwill of the HINCKLEY trademark, and created a website available at www.hinckleyboat.com (the "Website").  On the Website, which prominently features and displays the HINCKLEY and HINCKLEY YACHT SERVICES trademarks, Duplessie attacks and disparages Hinckley, making dozens of false statements regarding the nature and quality of Hinckley yachts and its repair services, including, but not limited to:

(a)     Fake images and video of boats ablaze, with captions "Putting Lives at Risk" and "The Hinckley Death Ship."  The statements are false, and the images are fake or are not images of actual Hinckley yachts.

(b)     "Independent analysis of Hinckley Yacht Services repairs exposed 53 critical and important safety items, that posed a direct risk of fire, explosion, electrocution, injury, or loss of life, loss of boat."  This statement is false.  None of the purported "safety items" alleged by Duplessie on his Website were created by Hinckley; but were instead created by Duplessie or prior owners of the Vessel due to age, wear and tear and lack of maintenance.

(c)      The Defendant's Vessel was "forced to withdraw from the Annapolis Bermuda race due to the low quality of Hinckley Yacht Services work…"  This statement is false.  Duplessie could not participate in the race because the Hinckley Easton Yard will not release the Vessel until the balance due is paid.

28.      Duplessie specifically identifies the foregoing misleading and false images and statements as being directed at prospective Hinckley owners.  *See* screen captures from https://hinckleyboat.com attached as Exhibit 2.

29.      The top of Duplessie's Website prominently displays the HINCKLEY YACHT SERVICES mark, as well as Hinckley's registered logo depicted in the same gold color used by Hinckley, with flames coming off of the top of the logo.  Below is an image of Duplessie's Website as it appeared on January 20, 2023:



30.      In or about October 2022, Duplessie also created a Facebook page named "Hinckley Boats," which also displayed a misleading and similar copy of Hinckley's registered

logo, and misleadingly listed its address as 8600 Brooks Drive, Easton, Maryland, which is the

location of Hinckley's Easton Yard.  Duplessie also created and maintains an Instagram Account

under the name "hinkleyboats".  The Facebook and Instagram pages repeated the statements

from the Website described above, and published additional false statements, including, (a)

Images of T-shirts being sold or offered by Defendant stating "BUY A HINCKLEY AND DIE";

and (b) "Billing for services you did not commit and then getting caught.  Oops."  A true and

accurate image of one of the T-shirts advertised on the Instagram page is attached hereto at

Exhibit 3.

31.     Also in October 2022, Duplessie staged a "protest" outside of the Annapolis Boat

Show, where he distributed water bottles and other materials publicizing false and disparaging

information similar to that published on the Website, claiming that the materials were distributed

in order to "raise awareness about the decline of Hinckley."  The water bottles were packaged

with labels bearing the Trademarks and falsely stating that Hinckley is "Putting your family's

life at risk," that the Hinckley yacht is a "death ship" and that Hinckley is "A Cancer on Classic

Yachts" and "53 Ways to Die."

32.     Duplessie disseminated similar false information at the 2022 Boat Show in St.

Michael's, Maryland, telling prospective Hinckley customers that Hinckley vessels put lives at

risk and are death traps.  Hinckley employees were forced to defend Duplessie's baseless

accusations.

33.     Duplessie's actions described above are likely to cause confusion, mistake, and

deception as to the source or origin of Duplessie's products and services, including the Website,

and are likely to falsely suggest a sponsorship, connection, license, or association between

Duplessie, his products and services, and/or his commercial activities with Hinckley, its products

and services, and/or commercial activities.  Duplessie's use of the Trademarks and Domain Name has injured and, unless enjoined by this Court, will continue to injure Hinckley, the goodwill associated with its Trademarks, and Hinckley's hard-earned and valuable reputation.

34.     Duplessie's use of the Trademarks intentionally creates a negative and undesirable association—one involving shocking and violent imagery—in the minds of consumers that conflicts with the positive associations and images that Plaintiff has long promulgated in advertising and promoting its products and services, and that tarnishes the brand identity and reputation of the Trademarks.

35.     Duplessie's actions described above have damaged and, if permitted to continue, will further damage Hinckley's Trademarks and name, Hinckley's reputation and goodwill associated with its Trademarks and name, and the public interest in being free from confusion.

36.     Duplessie's actions described above have irreparably harmed and, if not enjoined, will continue to irreparably harm Hinckley and its Trademarks.

37.     Duplessie's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT I: INFRINGEMENT OF REGISTERED TRADEMARKS (against Duplessie)

38.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

39.     Duplessie's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Duplessie's Website and other activities, and thus constitute trademark infringement of Plaintiff's Registered Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40.     Duplessie's actions described above have at all times relevant to this action been willful and knowing.

41.     As a direct and proximate result of Duplessie's actions described above, Plaintiff has been damaged and will continue to be damaged.

## COUNT II: TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION (against Duplessie)

42.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

43.     Duplessie's actions described above are likely to cause confusion or mistake, or to deceive, as to the origin, sponsorship, or approval of Duplessie's products, services, Website, and other activities, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to Plaintiff's trademark rights in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44.     Duplessie's actions described above have at all times relevant to this action been willful and knowing.

45.     As a direct and proximate result of Duplessie's actions described above, Plaintiff has been damaged and will continue to be damaged.

## COUNT III: UNFAIR COMPETITION COMPROSING FALSE AND MISLEADING STATEMENTS OF FACT (against Duplessie)

46.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

47.     By engaging in the actions described above, Duplessie has made, and continues to make, false and misleading representations of fact to consumers and potential consumers, which, in commercial advertising or promotion, misrepresents the nature, characteristics, and qualities

of his products, services, Website, and other activities in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

48.     Duplessie's actions described above have at all times relevant to this action been willful and knowing.

49.     As a direct and proximate result of Duplessie's actions described above, Plaintiff has been damaged and will continue to be damaged.

### COUNT IV: TRADEMARK DILUTION (against Duplessie)

50.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

51.     Duplessie's actions described above, all occurring after the Trademarks became famous, are likely to cause dilution by blurring or by tarnishment, or both, of the distinctive quality of the famous Trademarks in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

52.     Duplessie's actions described above have at all times relevant to this action been willful and knowing.

53.     As a direct and proximate result of Duplessie's actions described above, Plaintiff has been damaged and will continue to be damaged.

### COUNT V: CYBERSQUATTING (against Duplessie)

54.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

55.     Duplessie's actions, occurring after the Trademarks became distinctive and famous, constitute a bad faith attempt to profit from the Trademarks by use and registration of a domain name that is confusingly similar thereto and that dilute their distinctiveness, and are actionable under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

56.    Duplessie's actions described above have at all times relevant to this action been willful and knowing.

57.    As a direct and proximate result of Duplessie's actions described above, Plaintiff has been damaged and will continue to be damaged.

## COUNT VI: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION
### (against Duplessie)

58.    The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

59.    Based upon the purposeful actions of Duplessie which are clearly intended to cause irreparable harm to Plaintiff's business, reputation and goodwill, there exists the strong likelihood that Plaintiff will succeed on the merits of its claim.

60.    Allowing Duplessie to continue to engage in the activities described herein will cause immediate, substantial, and irreparable harm to Plaintiff.  Duplessie's unlawful and tortious conduct is causing irreparable damage to Plaintiff's relationships with its existing customers and prospective customers.

61.    The benefits to Plaintiff in obtaining injunctive relief outweigh the potential harm that Duplessie may incur if this Court grants the requested injunctive relief, and will allow Plaintiff to continue normal business operations while the remaining issues are litigated in this case—a benefit to both parties.

62.    The public interest is best served by granting a preliminary and permanent injunction because, as set forth above, this dispute is having a detrimental impact on the operations of Plaintiff, and by implication, on current and prospective Hinckley customers all over the United States.

## COUNT VII: BREACH OF MARITIME CONTRACT (against both Defendants)

63.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

64.     Plaintiff entered into one or more maritime contracts with Defendants to winterize, store, and repair the Vessel in exchange for an agreed-upon rate of payment for materials and services provided to the Vessel as described herein above (collectively the "Services").

65.     Plaintiff performed the Services, and provided other necessaries to the Vessel, with the authorization and approval of Defendants.

66.     All of the Services were performed in a quality, workmanlike manner, and Duplessie was duly invoiced for the labor and materials provided to the Vessel, in the total amount of $260,002.  Defendant Duplessie paid a total of $143,240, for a net balance due and unpaid of $116,762.

67.     Despite repeated demand, the past due balance of $116,762 remains due and owing.

68.     Defendants have breached the contract(s) entered into between the parties by failing to pay, upon timely demand, the balance of $116,762, which Plaintiff has suffered in damages.

69.     Defendants are in breach of contract, and Plaintiff is entitled to $116,762, plus pre-judgment interest.

**COUNT VIII: QUANTUM MERUIT/UNJUST ENRICHMENT (against both Defendants)**

70.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

71.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

72.     Plaintiff furnished materials and labor to the Vessel, for which materials and labor Defendants have failed to pay Plaintiff.

73.     Plaintiff rendered valuable Services to Defendants and the Vessel, with the intention of receiving payment for the Services rendered.

74.     Defendants authorized and accepted the Services and knew they were receiving a benefit from the Services.

75.     All of the Services rendered by Plaintiff to the Vessel were rendered under such circumstances that Defendants knew that Plaintiff expected to be paid for the value of its Services.

76.     Defendant have failed to pay, upon timely demand, the balance of $116,762 due for the Services, which amount represents the value of the Services provided to Defendants.

77.     It would be inequitable and unjust for the Defendants to retain the benefit of the Services without paying Plaintiff for their value.

## COUNT IX: INTERFERENCE WITH PROSPECTIVE ADVANTAGE/BUSINESS RELATIONSHIPS (against Duplessie)

78.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

79.     Duplessie has engaged in intentional, purposeful acts directed at causing harm to the Plaintiff's business relationships with its existing and prospective customers, which acts have included, but are not limited to, the publication and dissemination via the internet (specifically, a website featuring Hinckley's Trademarks), social media, and in person distribution of flyers and other marketing materials which contain false and misleading information about the nature and quality of the Plaintiff's goods and services as more fully described herein above, i.e., that its yachts are inherently dangerous, which statements are demonstrably false.

80.     Duplessie engaged in the foregoing acts to cause existing customers to discontinue Defendants' relationships with Plaintiff and to cause prospective customers to avoid purchasing Hinckley yachts and avoid obtaining repairs or other services at Hinckley's yards, thereby damaging Plaintiff's ability to continue its business or turn a profit, and damaging its reputation and goodwill.

81.     The foregoing acts were committed by Duplessie with the unlawful or improper purpose to cause damage and losses to Plaintiff's business, without justification, and the acts have caused actual damage to Plaintiff's business and reputation, loss of existing and prospective customers, lost profits and lost income, as well as the expense of measures reasonably necessary to counteract the publication of Duplessie's false statements.

## COUNT X: INJURIOUS FALSEHOOD/DISPARAGEMENT OR SLANDER OF TITLE
### (against Duplessie)

82.     The facts and allegations contained in the preceding paragraphs are incorporated herein by reference as if restated in their entirety.

83.     Plaintiff has a legally protected property interest that is capable of being sold, i.e., the yachts manufactured and offered for sale by Plaintiff, as well as marine repair and maintenance services offered by Plaintiff.

84.     Duplessie has intentionally and knowingly made false statements regarding the nature and quality of Hinckley yachts and its repair services, which statements were made in writing, via a Website located at www.hinckleyboat.com, on Facebook and other social media, and via public distribution of water bottles and other printed materials, which statements are more fully described herein above.

85.     Those statements disparage the quality of Plaintiff's yachts.

86.     Duplessie made the foregoing statements with actual malice or with reckless disregard for the truth of the statements, and directed the statements at current and prospective Hinckley customers.

87.     The false statements made by Duplessie have played a material and substantial part in inducing others not to deal with the Plaintiff.

88.     As a result of Duplessie's false statements, the Plaintiff has suffered special damages, namely, the loss of current and prospective customers at its Maryland locations, impairment of vendibility or value of the yachts and related services disparaged by Defendant, and the expense of measures reasonably necessary to counteract the publication of Defendant's disparaging statements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment enter in favor of Plaintiff and against Defendants on all counts asserted, awarding Plaintiff:

1.     Compensatory damages in an amount to be determined at trial;

2.     An amount up to three times the amount of its actual damages, in accordance with 15 U.S.C. § 1117(a);

3.     Statutory damages in accordance with 15 U.S.C. § 1117(d);

4.     Punitive and exemplary damages as the court finds appropriate to deter any future willful infringement;

5.     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

6.     Injunctive relief, preliminarily and permanently enjoining the Duplessie from:

a.  using the Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Trademarks;

b.  engaging in any activity that infringes Plaintiff's rights in its Trademarks;

c.  engaging in any activity constituting unfair competition with Plaintiff and/or with respect to the Trademarks;

d.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Trademarks;

e.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Plaintiff's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Duplessie;

f.  using or authorizing any third party to use, in connection with any business, goods, or services, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

g.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Trademarks or any other mark that infringes or is likely to be confused with Plaintiff's Trademarks, or any goods or services of Plaintiff, or Plaintiff as their source; and

h.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

7.   Directing Duplessie to immediately cease the use of any and all websites, social media platforms, printed materials, labels, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Trademarks, and to immediately remove them from public access and view, including transfer of the Domain Name to Plaintiff;

8.   Interest, including prejudgment and post-judgment interest; and

9.   Such other and further relief as the Court deems just and proper.


Respectfully submitted,


*/s/Meighan G. Burton*
Meighan G. Burton USDCMD #28022
MD AIS #0512140002
Pascale Stevens LLC
2700 Lighthouse Point East, Suite 500
Baltimore, Maryland 21224
(443) 863-5762 (T)
(443) 863-5751 (F)
mburton@pascalestevens.com
*Attorneys for Plaintiff*


*Of Counsel:*

Michael J. Daly
Pierce Atwood LLP
One Financial Plaza, 26th Floor
Providence, RI  02903
401.490-3424 (T)

(401) 588-5166 (F)
*mdaly@pierceatwood.com*